The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on the date of the injury giving rise to this claim.
3. American Home Assurance Company was the carrier on the risk for workers' compensation purposes.
4. The date of the alleged injury by accident was 17 August 1999.
5. Plaintiff's average weekly wage on 17 August 1999 was $350.68. This yields a compensation rate of $233.80.
6. Defendants have paid plaintiff a total of $36.83 in temporary total disability benefits, and a total of $386.76 in temporary partial disability benefits.
7. In addition to the deposition transcripts and exhibits attached thereto, the parties stipulated into evidence in this matter a packet of plaintiff's medical records which consists of six tabs from different medical care providers. In addition, defendants introduced and the deputy commissioner admitted into evidence defendants' exhibit one, plaintiff's injury report to defendant-employer.
8. The issues to be determined by the Commission are whether plaintiff sustained a compensable injury by accident or specific traumatic accident to her back on 17 August 1999, and if so, to what additional medical and indemnity benefits is she entitled.
9. The depositions of Dr. Jeffrey A. Knapp, Dr. Charles G. James, and Dr. Joanna Woyciechowska are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 17 August 1999 plaintiff was employed as a sales associate in the seafood department of defendant-employer. On that day, plaintiff was unloading a cart of boxes of frozen seafood and putting the boxes into the freezer. When doing so, plaintiff contends that she bent over and lifted a heavy box of frozen seafood when suddenly the box slipped and the weight of the box caused plaintiff to fall forward. The box landed on plaintiff's hands on the floor, with plaintiff bent over at the waist. Plaintiff felt immediate pain in her upper back across her shoulders and in her low back.
2. Plaintiff immediately notified her supervisor that the incident had occurred. Plaintiff was then taken by the employer's safety coordinator to Shelby Family Practice where she was examined by Dr. James, an internist. At this examination, plaintiff presented with exaggerated symptoms. For instance, plaintiff was brought in on a wheelchair, exhibited marked grimacing and protestations of pain at the slightest bit of examination, initially was unable to move her arms and legs, and she moved her head and looked away when she spoke. In fact, Dr. James noted that plaintiff had severe emotional and psychological overlay and should undergo a mental health evaluation and/or therapy. In his physical examination, Dr. James noted tenderness but no spasm over plaintiff's back, and had x-rays done, which were essentially normal.
3. Dr. James took plaintiff out of work for 24 hours. Thereafter plaintiff called the medical office to complain about being taken out of work for one day; plaintiff reported that she felt she should have been put on light duty. However, a review of Dr. James' medical notes reveals that plaintiff's release to return to work was, in fact, with restrictions.
4. On 21 August 1999 plaintiff was seen by Dr. Miller at Shelby Family Practice, who also felt that plaintiff was not "as significantly injured as she seems to want to portray." When plaintiff indicated that she neither wanted nor needed a mental health evaluation, Dr. Miller referred plaintiff to an orthopedic physician for further evaluation. Dr. Miller wrote plaintiff out of work from 21 August 1999 until she could be evaluated by the specialist.
5. Plaintiff was seen by Dr. Knapp, an orthopedic surgeon, on 25 August 1999. His impression, after examination, was lumbar strain syndrome, which essentially means a soft tissue injury. Dr. Knapp released plaintiff to return to work with restrictions, and prescribed anti-inflammatory medication and back exercises. On 8 September 1999 Dr. Knapp ordered physical therapy. By 21 September 1999, despite having begun physical therapy, plaintiff reported no decrease in her pain symptoms, and Dr. Knapp therefore restricted her to four hours of work per day. However, on 13 October 1999 Dr. Knapp felt that plaintiff was capable of working eight hours per day as a greeter so long as she could sit or stand as needed.
6. Over the course of Dr. Knapp's treatment of her, plaintiff's complaints appeared to increase without corresponding objective findings. Plaintiff exhibited signs of symptom magnification and positive Waddell signs, and pain symptoms that were of nonanatomic, nonorganic distribution. Plaintiff did not respond at all to physical therapy or to medication, both of which, given the nature and extent of her injury, should have been beneficial to her. Plaintiff complained of back spasms; however, these were undetected by Dr. Knapp. In addition, plaintiff had normal reflexes, and diagnostic tests such as x-rays and MRIs were negative.
7. On 1 December 1999, after examination, Dr. Knapp felt there were no objective findings that would justify limiting plaintiff's ability to work, and based upon her negative MRI, plaintiff was capable of unrestricted work. Dr. Knapp released plaintiff from his care and assigned a zero percent permanent partial impairment as a result of the injury sustained by plaintiff on 17 August 1999. Dr. Knapp does not believe that plaintiff is in need of chronic pain management treatment.
8. After her release by Dr. Knapp, plaintiff of her own volition sought treatment from Dr. Woyciechowska, a neurologist. Plaintiff first saw Dr. Woyciechowska on 8 December 1999. Dr. Woyciechowska did not have the benefit of reviewing plaintiff's prior medical notes or diagnostic test results, but instead based much of her opinions on plaintiff's representations to her. Dr. Woyciechowska assigned work restrictions to avoid lifting, bending, and standing longer than two hours at a time. In addition, the physician ordered new MRIs of plaintiff's cervical, thoracic, and lumbar spine, all of which were negative. On 23 February 2000 Dr. Woyciechowska again imposed work restrictions. Dr. Woyciechowska only saw plaintiff on two or three occasions thereafter, and referred plaintiff to Kings Mountain Hospital Southeast Pain Clinic for pain management.
9. Dr. Woyciechowska and the physician at the pain clinic have diagnosed plaintiff with chronic pain syndrome and myofascial pain syndrome, and these physicians are of the opinion that further medical care for these syndromes is necessary. Based upon the history and representations given by plaintiff to her, Dr. Woyciechowska also is of the opinion that the accident sustained by plaintiff on 17 August 1999 is the cause of plaintiff's chronic pain syndrome and myofascial pain syndrome.
10. According to the medical notes stipulated into evidence in this matter, Dr. Woyciechowska never took plaintiff out of work altogether, and indicated in her deposition that the greeter position offered by defendant-employer would be "much better" than the seafood sales associate position and that she "hope[d]" that plaintiff could perform such a job. Dr. Woyciechowska never expressed the opinion that plaintiff was incapable of performing or at least attempting the greeter job.
11. The physicians involved in plaintiff's care universally believed that plaintiff was capable of working in some capacity. Even Dr. Woyciechowska, the unauthorized physician, felt that at least through March 2000 plaintiff was capable of working within certain restrictions. Throughout this period, however, plaintiff continued to insist that she was either totally incapable of working, or capable of working with only the most restrictive limitations. The record is replete with references to plaintiff contacting the various physicians and asking for notes writing her out of work.
12. After the injury by accident of 17 August 1999, plaintiff, despite being capable of restricted work, did not immediately return to work for defendant-employer. There is insufficient evidence from which the undersigned can find by its greater weight that defendant-employer had available employment suitable for plaintiff's physical capacity after the injury by accident until such time as plaintiff was offered another position.
13. Defendant-employer then offered plaintiff a position as a greeter, which involved no lifting or bending, and during which plaintiff could alternate sitting and standing as necessary. Plaintiff started this position on 11 September 1999. However, on 21 September 1999, Dr. Knapp restricted plaintiff to work fewer hours in the greeter position. On 13 October 1999 Dr. Knapp felt that plaintiff was capable of performing this greeter position on a full-time, eight-hour basis.
14. On 20 November 1999 the co-manager of the store witnessed plaintiff walking briskly in the parking lot outside the store, and he watched as she slowed her gait and changed her demeanor considerably when she entered the store. The co-manager then reviewed plaintiff's work restrictions and spoke to her to inform her that he expected her to work full eight-hour days. On the very day she was spoken to, plaintiff left work early without notifying the co-manager that she was doing so. The co-manager then felt he had grounds to terminate plaintiff, and when he stopped seeing her on a daily basis, he believed she had been terminated.
15. After being released to full-duty, unrestricted work by Dr. Knapp on 1 December 1999, plaintiff returned to work in her former position as a seafood sales associate. Plaintiff worked in this capacity only several hours per day, despite being released for full-time work.
16. Plaintiff's employment with defendant-employer was terminated on 17 February 2000 for violating company policy. Specifically, plaintiff was authorized by the recognized treating physician in this case to work full eight-hour days, but instead she consistently worked only two hours per day. Plaintiff was capable of working in the greeter position on an eight-hour per day basis from 13 October 1999 through 1 December 1999, but chose not to do so. After 1 December 1999, plaintiff was capable of working on an eight-hour per day, unrestricted basis.
17. Any inability on the part of plaintiff to work on a full-time unrestricted basis after being released at full-duty on 1 December 1999 was not due to the injury by accident sustained by her on 17 August 1999, but was brought about by other factors such as her own volition.
18. Based on Deputy Commissioner Pfeiffer's observations prior to and during the course of the hearing, plaintiff was able to sit comfortably for approximately five hours while attending the hearing, without noticeably demonstrating pain behaviors, despite plaintiff's contentions that she was totally disabled.
19. The medical notes and testimony of Drs. James, Miller, and Knapp are afforded greater weight herein than that of Dr. Woyciechowska. This is based on the fact that Dr. Woyciechowska did not see plaintiff until four months after the injury by accident, and because Dr. Woyciechowska's opinions were based largely on plaintiff's representations, and not based on a review of the prior medical records in the matter.
20. Having weighed the testimony and assessed the credibility of plaintiff in this matter, coupled with a careful review of the medical records, plaintiff's claim that she remained disabled within the meaning of the Act after 1 December 1999 is deemed not credible. Furthermore, and for these same reasons, plaintiff's claim that further medical treatment is necessary is likewise deemed not credible.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on 17 August 1999 when the box that she was lifting caused her to fall forward to the floor. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury by accident on 17 August 1999, plaintiff was temporarily totally disabled from 17 August 1999 through 10 September 1999. N.C. Gen. Stat. § 97-29.
3. As a result of her compensable injury by accident on 17 August 1999, plaintiff was temporarily partially disabled from 21 September 1999 through 12 October 1999. N.C. Gen. Stat. § 97-30.
4. Plaintiff unjustifiably refused suitable employment with the defendant from 13 October 1999 through 1 December 1999 and is therefore not entitled to temporary partial disability benefits for that period. N.C. Gen. Stat. § 97-32.
5. After 1 December 1999, plaintiff was no longer disabled within the meaning of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(9);Harrington v. Adams-Robinson Enterp., 349 N.C. 218, 504 S.E.2d 786
(1998).
6. As a result of her compensable injury by accident on 17 August 1999, plaintiff was entitled to medical compensation for all related medical treatment that was necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§97-2(19) and 97-25. However, unless already paid by defendants, this does not include treatment by Dr. Woyciechowska, as plaintiff did not seek authorization by either the carrier or the Industrial Commission to treat with this physician. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim for additional indemnity and medical benefits must be, and the same is HEREBY DENIED, unless the benefits ordered herein have not been paid in full. If plaintiff has not been paid temporary total disability compensation benefits from 17 August 1999 through 10 September 1999, defendants shall pay this period of benefits in the weekly amount of $233.80 to plaintiff. In addition, if plaintiff has not already been paid her full amount of temporary partial disability benefits from 21 September 1999 through 12 October 1999, defendants shall forward the same to plaintiff. Any compensation that has not already been paid has accrued and shall be paid in a lump sum, and is subject to a reasonable attorney's fee of 25 percent to be paid to plaintiff's counsel of record.
2. If not already paid, defendants shall pay an expert witness fee of $400.00 to Dr. Knapp for his deposition testimony in this matter.
3. Each side shall bear its own costs.
This the ___ day of ___ 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER